**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **WAYNE PESEK,** ) | |
| ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 06 C 1551 |
| ) | |
| **FRANK MARZULLO, RUSSELL** ) | |
| **MARZULLO, RUSSELL MARZULLO,** ) | |
| **Jr., JERRY MARZULLO, MICHAEL** ) | |
| **FELLOWS, CHARLES BAUGH, MICHAEL** ) | |
| **VOKAC, BRIAN MARQUARDT and CITY** ) | |
| **OF BERWYN,** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Wayne Pesek filed multiple claims under 42 U.S.C. §
1983 and Illinois law against the City of Berwyn (hereinafter
"Berwyn" or "the City"), along with a number of individual
defendants, as a result of an altercation at the Golden Steer
Restaurant in Forest Park, Illinois. The individual defendants are
Frank Marzullo, Director of Public Safety ("DPS") for the City;
Michael Fellows and Michael Vokac, Berwyn police officers; Jerry
Marzullo, a Cook County Assistant State's Attorney; Russell
Marzullo, Jr. and Brian Marquardt, Berwyn firefighters; and Russell
Marzullo, Sr. and Charles Baugh, who were not Berwyn employees.
Plaintiff alleges that on April 5, 2006, he was restrained and
beaten by defendants both inside and outside the restaurant.

Defendants dispute this and contend plaintiff was drunk and the aggressor, and any contact with him was in self-defense. All defendants have moved for summary judgment and filed motions to strike. For the following reasons, defendants' motions for summary judgment are granted in part and the motions to strike are denied.

I.

Summary judgment is appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 787 (7th Cir. 2007); FED. R. CIV. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" deprives a person of his federal constitutional or statutory rights shall be liable in an action at law. 42 U.S.C. § 1983. To succeed on a § 1983 claim, a plaintiff must establish the defendant(s) deprived him of a right secured by the Constitution or any law of the United States and that the deprivation of that right resulted from the defendant(s) acting under color of law. *Thurman v. Village of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). Non-state actors may be found to act under color of state law when defendants

have conspired or acted in concert with state actors to deprive a person of his civil rights. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).

## II.

### A. Frank Marzullo

Frank Marzullo moves for summary judgment on the ground that plaintiff cannot establish he was acting under color of law. "[A]cts by a state officer are not made under color of [] law unless they are related in some way to the performance of the duties of the state office." *Honaker v. Smith*, 256 F.3d 477, 484-85 (7th Cir. 2001) (citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990); *Briscoe v. LaHue*, 663 F.2d 713, 721 n. 4 (7th Cir. 1981)).

In this case, there is a genuine issue of material fact as to whether Frank Marzullo was acting under color of law. Although the parties dispute what exactly happened at the bar that night, Frank Marzullo testified that he was trying to "keep the peace" at the time of the alleged incident; this is consistent with his duties as DPS. (Berwyn Ex. C at 40-41, 87.) Frank Marzullo also testified at his deposition that once the Forrest Park police arrived "[t]here was no more need for my assistance at that time – other than to talk to the police officers and tell them what I had seen." (Id. at 100.) Michael Fellows also testified he was ordered by Frank Marzullo to leave the bar and he explained he followed those orders

because "he's my boss.  I follow anything that he tells me to do."
(Berwyn Ex. G. at 82, 112-13.)  Officer Grimes, of the Forest Park
Police, also testified that Frank Marzullo flashed his badge and
identified himself as police around the time Officer Grimes arrived
at the scene and said he was in charge.  (Berwyn Ex. P, 22, 33-34.)
When these statements, along with plaintiff's deposition testimony,
are taken in the best light to plaintiff there is a triable issue
of fact as to whether Frank Marzullo was acting under color of law.
Accordingly, Frank Marzullo's motion for summary judgment is
denied.

### B.  Individual Defendants

1.  Color of Law

The remaining individual defendants first argue that they were
not acting under color of law.  These individual defendants group
themselves into the police officer defendants (Fellows and Vokac)
and non-officer defendants (Russell Marzullo, Sr., Russell
Marzullo, Jr., Charles Baugh, Jerry Marzullo, and Brian Marquardt).
With respect to the officer defendants, these particular defendants
make much of the fact that they were not on-duty at the time the
altercation occurred, nor were they in uniform or flashed police
identification or weapons.  As a preliminary matter, the record is
sparse on what actions, if any, were taken by Vokac.  Plaintiff
testified he was taken outside by Fellows and Baugh (a non-officer
defendant).  Plaintiff could not identify Vokac or his degree of

involvement in the incident in his deposition testimony. Nor does Vokac appear to have been deposed, as his deposition is not included in the present record. Accordingly, in the absence of evidence of Vokac's involvement,[1] much less of whether he was acting under color of law or in concert with any other defendants, I cannot find the existence of a triable issue of fact and his motion for summary judgment is granted.

In contrast, Fellows is specifically identified as punching plaintiff and removing him from the restaurant. Consistent with plaintiff's testimony, Fellows testified he was acting at the direction of Frank Marzullo during the incident. "For a[] [private] individual to act under color of law, there must be evidence of a *concerted effort* between a state actor and that individual." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (citations omitted) (emphasis in original). When taken in the best light to plaintiff, there is evidence of concerted action here. Therefore, even putting aside the issue of whether Fellows was a state actor as a result of his employment at the time of the event in question, there is a genuine issue of material fact as to whether he acted in concert with Frank Marzullo as a state actor. Accordingly, Fellows' motion for summary judgment on this ground must be denied.

---

[1]Plaintiff fails to cite to any specific portion of the record which establishes any involvement by Vokac.

The remaining non-officer defendants also argue they are entitled to summary judgment because they were not acting under color of law. Plaintiff argues there is sufficient evidence of a conspiracy or concerted action by these defendants with Frank Marzullo as a state actor. "To establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, . . . and (2) those individual(s) were willful participants in joint activity with the State or its agents." *Id.* (quotation and citations omitted).

Once again, the record is sparse with respect to the involvement of certain individual defendants. In his deposition testimony, plaintiff is only able to identify Charles Baugh, Jerry Marzullo, and Russell Marzullo, Sr. in addition to Fellows, as physically striking him and/or restraining him either inside or outside the restaurant at the direction of Frank Marzullo. (*See* Berwyn Ex. B at 142, 146, 147-48, 150, 157-60, 171-176.) These identified defendants' motions for summary judgment are denied in light of this testimony. In contrast, in the absence of evidence that the remaining defendants took directives from or otherwise acted in concert with Frank Marzullo, I cannot find plaintiff has established the existence of a material issue of genuine fact with respect to whether Russell Marzullo, Jr. and Brian Marquardt acted

under color of law.  Accordingly, their motions for summary judgment are granted.

2.  Constitutional Deprivation

The remaining individual defendants, Fellows, Baugh, Jerry Marzullo, and Russell Marzullo, Sr., also move for summary judgment on the ground that plaintiff has failed to establish they caused plaintiff a constitutional deprivation.  "'An official satisfies the personal responsibility required of § 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge or consent.'" *Brokaw v. Mercer County*, 235 F.3d 1000, 1012 (7th Cir. 2000) (quoting *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985)) (alterations omitted).  Causation is generally a question of fact. *See Wisconsin Mut. Ins. C. v. United States*, 441 F.3d 502, 505 (7th Cir. 2006).

When the record is taken in the best light to plaintiff, there is a genuine issue of material fact to whether they caused plaintiff a constitutional deprivation when they physically struck or restrained him both inside and outside the restaurant. Accordingly, the remaining defendants' motion for summary judgment on this ground is denied.

3.  State Law False Arrest and Imprisonment Claims

    Defendants Jerry Marzullo and Russell Marzullo, Sr. move for summary judgment on plaintiff's state law false arrest and imprisonment claims (counts XXI and XXIII) on the ground that there is no evidence that these defendants restrained plaintiff.  Only defendants Baugh and Fellows are said to have restrained him.  In order to establish a claim for false arrest and imprisonment under Illinois law, a plaintiff must show that the defendant caused or procured a restraint of the plaintiff's personal liberty or freedom of locomotion without having reasonable grounds to believe that the plaintiff had committed an offense.  *See Jenkins v. Nat'l R.R. Passenger Corp.*, No. 07 C 3427, 2008 WL 68685, at *10 (N.D. Ill. Jan. 3, 2008) (Kendall, J.) (citations omitted); *Brabec v. Green*, No. 05 C 6646, 2006 WL 1987820, at *2 (N.D. Ill. Jul. 13, 2006) (Aspen, J.) (citations omitted); *Dutto v. Roo-Mac, Inc.*, 100 Ill.App.3d 116, 119, 426 N.E.2d 604, 607 (Ill. App. 1981).

    When the record is taken in the best light to plaintiff, there are triable questions as to whether these defendants' kicking or punching of plaintiff caused or procured plaintiff's restraint.  In other words, whether his personal liberty or freedom of locomotion was improperly restricted as a result of defendants' conduct.  Accordingly, the motion for summary judgment is denied.

## C.  City of Berwyn

Counts XV (*Monell* claim) and XXVI (state law *respondeat superior* claim) are directed at the City of Berwyn.  The City moves for summary judgment on both counts.

1.  *Monell* claim.

Under § 1983, municipalities may be held liable for constitutional violations caused by their official policies including unwritten customs.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).  Plaintiff may demonstrate the existence of a municipal policy or custom by establishing: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the final force of law; or (3) that the constitutional inquiry was caused by a person with final policymaking authority.  *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007).

In this case, plaintiff argues there is sufficient evidence under the second and third available *Monell* theories, *i.e.*, there was a widespread practice constituting a custom or usage with the final force of law, and that Frank Marzullo had final policy making authority.  With respect to the former, "an isolated decision by a municipal employee or official constitutes official policy only if that official has 'final policymaking authority' for the challenged

act under state law." *Partee v. Matropolical Sch. Dist. of Washington Twp.*, 954 F.2d 454, 456 (7th Cir. 1992) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988)). Whether Frank Marzullo had final policymaking authority is a question of state or local law. *See Jett v. Dallas Indept. Sch. Dist.*, 491 U.S. 737 (1989).

There is no dispute that as DPS for the City, Frank Marzullo oversaw both the Berwyn Police and Fire Departments. The position of DPS is created by ordinance which provides

> The Director of Public Safety shall have charge of the Police Department and the Fire Department and shall be responsible for the safe and efficient conduct and operation of those Departments. He or she shall enforce all applicable provisions of the Code of Ordinances and all statutes and laws in effect in the City of Berwyn and shall preserve order and prevent infractions of the law and arrest violators thereof; shall mitigate the results and render aide in the case of an accident or disaster; shall prevent and extinguish accidental or destructive fires; shall perform such other duties in the preservation of life and property as may be assigned by the Mayor; shall be the keeper of the jail and have custody of all persons incarcerated therein; shall have the custody of all apparatus and property pertaining to the public safety responsibilities of the Department and shall keep such records and make such reports as may be required by the Mayor. He or she shall have the power to appoint and remove non-sworn employees of the Department and to adopt rules to govern the operation of the Department and the conduct of its members and employees, to determine by rule title and order or rank of positions with the Department; to designate which positions within the Department are entry level positions and which are duty assignment positions; to fix the duties of all members and employees of the Department and all subject to the approval of the Mayor.
> In addition, the Director of Public Safety shall have the power to assign members of the Department for purposes of training and improvement in their knowledge and

> efficiency, to attend training facilities outside the City. Members of the Department who may be so assigned shall be considered as being on duty and in the same manner as though assigned to duty at the Public Safety Department.

Ordinance No. 97-35, Chapter 244 (Aug. 13, 1997)(Pl. Ex. 1.)

Furthermore, the Berwyn Police Department Procedural Manual, in effect at the time of the incident, provides that

> The Director of Public Safety shall have responsibility for the management and control of all matters pertaining to the Police Department. He will plan, organize, staff, direct and control the personnel and resources of the Department in a manner conducive of attaining its goals. He shall direct that suitable records of all Department activities be kept. He shall promulgate all Rules, Regulations and Orders of the Department.

(Pl. Ex. 2.)

In light of Frank Marzullo's powers and responsibilities as DPS, as set forth under municipal law and the internal police department procedural manual, I find he was a final policymaker under local law. His authority included more than the discretion to make final decisions to carry out the policies of the police department - he had the discretion to promulgate all rules, regulations and orders of the police department. *See Eversole v. Steele*, 59 F.3d 710, 716 (7th Cir. 1995). The issue becomes, then, whether the policymaker "was at the apex of authority for the action in question." *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 468 (7th Cir. 2001). The City argues Frank Marzullo's conduct at the restaurant "was distinct from the power to fashion policy on behalf of the City." In other words, that his

11

conduct at the restaurant did not constitute policymaking and cannot be attributed to the City.

"[N]ot every action taken by employees with decisionmaking authority gives rise to the potential for liability." *Eversole*, 56 F.3d at 715. "The fact that a particular official — even a policymaking official — has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. . . . The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Pembaur*, 475 U.S. at 481-83 (citations and footnotes omitted). The law is clear that a single act can constitute policymaking. *Id.* at 481 ("[A] government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood.")

There is a question of fact as to whether Frank Marzullo's conduct fell within the ambit of his policymaking authority. Under local law, his policymaking authority within the police department is somewhat broad and could arguably include the alleged conduct as it potentially implicates questions of police procedure, discipline

and chain of command, to name a few. The issue boils down what actions he took on the night of the incident. These facts are in dispute. Accordingly, there is a triable issue as to what Frank Marzullo did or did not do on the night of the incident, whether he was acting under color of law, and whether he was exercising his policymaking authority. The motion for summary judgment on this ground is denied.

2. *Respondeat Superior*

The City argues it is entitled to summary judgment on plaintiff's *respondeat superior* claim because its employees did not act within the scope of their employment on the night in question. Frank Marzullo and Fellows are the remaining individual defendants who were employed by the City at the time of the incident.

Under a theory of *respondeat superior* in Illinois, "an employer can be liable for the tort of an employee, but only for those torts that are committed within the scope of employment." *Bagent v. Blessing Care Corp.*, 224 Ill.2d 154, 163, 862 N.E.2d 985, 991 (2007)). "To be within the scope of employment, an employee's acts must be: (1) the kind for which the employee is empowered to perform; (b) substantially within the authorized time and space limits; and (c) actuated, at least in part, by a purpose to serve the master." *Arias v. Allegretti*, No. 05 C 5940, 2008 WL 191185, at *5 (N.D. Ill. Jan. 22, 2008) (Gettleman, J.) (citation omitted). "Summary judgment 'is generally inappropriate when scope of

employment is at issue. Only if no reasonable person could conclude from the evidence that an employee was acting within the course of employment should a court hold as a matter of law that the employee was not so acting.'" *Id.* (quoting *Bagent*, 224 Ill.2d at 163; 862 N.E.2d at 991)).

In light of the conflicting testimony concerning defendants' conduct on the night in question, there is a triable question as to whether Frank Marzullo and Fellows were acting within the scope of their employment by trying to "keep the peace" in accordance with the police responsibilities. Accordingly, the motion for summary judgment is denied.

3. Access to Courts

"The First and Fourteenth Amendments to the U.S. Constitution guarantee the right to seek legal relief for asserted injuries that have a reasonable basis in fact and in law." *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 422 (7th Cir. 2000) (citations omitted). Judicial access should be allowed to be rendered inadequate as a result of efforts by state actors to impede an individual's access to courts. *Id.* (citations omitted); *Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir. 1995) (an attempt to cover up police wrongdoing which succeeded in briefly hiding the facts from the plaintiffs, and which ultimately neither prevented the plaintiffs from pursuing relief nor reduced the value of their claim was not actionable under section 1983).

Here, plaintiff first argues that defendants interfered with his access to courts because several witnesses were allegedly ordered to leave the scene by Frank Marzullo. The problem with this argument is that the Forest Park Police was ultimately able to interview Fellows, Baugh, and Jerry Marzullo (who allegedly fled the scene). There is no evidence the Frank Marzullo or any other defendant prevented Forest Park police from actually interviewing any witnesses. Plaintiff also argues that Frank Marzullo intimidated witnesses at the scene as a result of his employment and actions on the night in question. Again, plaintiff concedes, however, that these witnesses did give statements to the Forest Park police. Moreover, plaintiff's argument that the value of this lawsuit has been hindered as a result of Frank Marzullo's conduct is based on the speculation that the Forest Park police would have obtained "more meaningful statements" from witnesses had Frank Marzullo not been involved. None of plaintiff's arguments or speculation establish a genuine issue of material fact with respect to the access to courts claim. *See Walters v. Edgar*, 163 F.3d 430, 434 (7th Cir. 1998) ("[I]n the case of a denial of access to the courts . . . if the denial has had no effect on the legal relief sought by the plaintiff, no right has been violated"); *Vasquez*, 60 F.3d at 329. Accordingly, defendant's motion for summary judgment on count VIII is granted.

III.

For the foregoing reasons, defendants' motions for summary judgment are granted in part. Summary judgment is granted to defendants with respect to counts VI, IX, XII-XIV and claims against Russell Marzullo, Jr. (the complaint fails to distinguish Russell Marzullo, Jr. from Russell Marzullo, Sr., therefore I cannot specify which specific counts refer to which defendant). With respect to the motions to strike, although certain portions of plaintiff's response to defendants' statement of facts failed to comply with the local rules, I did not rely on these responses in deciding the motion for summary judgment. Accordingly, the motions to strike are denied as moot.

**ENTER ORDER:**

_____
    **Elaine E. Bucklo**
  United States District Judge

Dated:  July 22, 2008